AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California



NOV 15 2019

In the Matter of the Search of  
*(Briefly describe the property to be searched or identify the person by name and address)*

iPhone XS Max, Model: MT652LL/A  
SN: FFWXHU3WKPHC; IMEI: 357266093945620  
Digital SIM IMEI: 357266094330079

Case No. 19MJ5114

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachments A & B.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachments A & B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;  
☐ contraband, fruits of crime, or other items illegally possessed;  
☐ property designed for use, intended for use, or used in committing a crime;  
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 952 and 960 | Importation of Controlled Substances and Prohibited Acts A. |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Steven R. Merklein, Special Agent, Homeland Security Inv.  
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/15/2019

City and state: San Diego, CA

*Judge's signature*

Hon. Andrew G. Schopler United States Magistrate Judge  
*Printed name and title*

# AFFIDAVIT

I, Special Agent Steven R. Merklein, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

> iPhone XS Max, Model: MT652LL/A
> SN: FFWXHU3WKPHC
> IMEI: 357266093945620
> Digital SIM IMEI: 357266094330079
> Seized as FP&F: 2019250500009601
> (**"Target Device"**)

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Section(s) 952, 960, and 963, as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Jose Pablo JIMENEZ-Chaidez ("JIMENEZ-Chaidez") for importing approximately 18.76 kilograms (41.35 pounds) of methamphetamine and approximately 11.48 kilograms (25.30 pounds) of cocaine from Mexico into the United States. *See U.S. v. Jimenez-Chaidez*, Case No. 19-mj-3876 (S.D. Cal.) at ECF No. 1 (Complaint). The **Target Device** was seized from JIMENEZ-Chaidez at the time of his arrest, has been securely stored since that time, and is currently in the evidence vault located at 2255 Niels Bohr, San Diego, CA 92154.

3. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

//
//

1

## BACKGROUND

4. I am a special agent employed by the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I have been employed as a special agent since November of 2018, whereby I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. Prior to joining HSI, I was employed as a United States Border Patrol Agent (USBP). While employed as a Border Patrol Agent I served as a Task Force Officer (TFO) on a Drug Enforcement Administration (DEA) Narcotics Task Force and worked on both sector and station level intelligence & abatement teams. I also previously served in the United States Army from 1998 to 2004, serving as an infantry Non-Commissioned Officer. I received an Associates of Science in Criminal Justice degree from Springfield Technical Community College in 2002.

5. During my employment as a border patrol agent and work as a TFO, I have conducted criminal investigations for multiple violations of federal and state laws including, but not limited to alien smuggling, narcotics smuggling, and organized criminal activity. I have conducted and/or assisted in more than 50 investigations involving controlled substances. I have participated in several controlled purchases of narcotics with the use of confidential informants ("CIs") and I have personally conducted hand-to-hand drug transactions while operating in an undercover capacity. I have authored and/or participated in the execution of narcotic-related arrests and search warrants for violations involving controlled substances, including heroin, methamphetamine, cocaine, ecstasy, LSD, marijuana, and pharmaceuticals. Through these investigations, I have gained extensive knowledge from users of narcotics, sellers of narcotics, CIs and veteran narcotics detectives regarding the manner in which narcotics are sold, distributed, transported, stored, concealed and ingested.

6. In addition to my experience, I have received multiple formal trainings related to conducting controlled substance investigations. These courses primarily focused on the identification of controlled substances, case management/development, managing CIs, tactical street operations, undercover operations, surveillance operations, highway interdiction, hidden compartments and various methods of drug trafficking and human smuggling. In addition to these courses, I was previously certified by the California Attorney General to conduct wiretaps as authorized in California Penal Code Section 629.50 *et seq.*

7. Through my training, experience, and conversations with other members of law enforcement, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry. I am aware that it is common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones. Because they are mobile, the use of cellular telephones permits narcotics traffickers to easily carry out various tasks related to their trafficking activities, including, *e.g.*, remotely monitoring the progress of their contraband while it is in transit, providing instructions to drug couriers, warning accomplices about law enforcement activity, and communicating with co-conspirators who are transporting narcotics and/or proceeds from narcotics sales.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in narcotics trafficking investigations, I am aware that individuals engaged in drug trafficking commonly store photos and videos on their cell phones that reflect or show co-conspirators and associates

engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds and assets from drug trafficking, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

### FACTS SUPPORTING PROBABLE CAUSE

10. On September 10, 2019, at approximately 6:00 p.m., JIMENEZ-Chaidez applied for permission to enter the United States at the Tecate Port of Entry. The Defendant was the driver and sole occupant of a Cadillac ATS bearing California license plates. At the primary inspection JIMENEZ-Chaidez told a Customs and Border Protection ("CBP") Officer that he was going to "Escondido" and provided two negative customs declarations.

11. A Narcotics and Human Detection Dog alerted to the trunk area of the vehicle while it was in line between the primary and secondary inspection area of the Port of Entry. The canine officer pulled back the carpet on the inside of the trunk and found multiple plastic wrapped packages. JIMENEZ-Chaidez was asked to exit the vehicle and escorted to the security office. Further examination of the vehicle revealed packages in the rear quarter panels and on the interior of the gas tank. A total of 28 packages were removed from the vehicle. Ten were red rectangular cellophane wrapped packages, with a total weight of 11.48 kilograms (25.30 pounds); one of which was field-tested and tested positive for cocaine. The other 18 packages were white cellophane wrapped packages with a total weight of 18.76 kilograms (41.35 pounds); one of which was field-tested and tested positive for methamphetamine.

12. JIMENEZ-Chaidez was advised of his *Miranda* rights and elected to answer questions without an attorney present. JIMENEZ-Chaidez also provided written consent to search his cellular phone, the **Target Device**. Agents were unable to complete a forensic download of the **Target Device** prior to JIMENEZ-Chaidez being appointed counsel, however. This warrant is sought in an abundance of caution and to moot a subsequent challenge to the validity of JIMENEZ-Chaidez's consent or the effective date of revocation of consent.

13. Based upon my experience and investigation in this case, I believe that the **Target Device** contains evidence of violations of Title 21, United States Code, Sections 952, 960, and 963. Specifically, I believe that JIMENEZ-Chaidez, "Jesus," and other persons yet unknown were involved in an ongoing conspiracy to import methamphetamine, cocaine and other federally controlled substances into the United States. Based on my experience investigating narcotics smugglers, I also believe that JIMENEZ-Chaidez may have used the **Target Device** to coordinate with co-conspirators regarding the importation and distribution of controlled substances, and to otherwise further this conspiracy both inside and outside of the United States.

14.     In my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Given this, I respectfully request permission to search the **Target Device** for data from July 11, 2019 through September 11, 2019, the day following JIMENEZ-Chaidez's arrest.

## METHODOLOGY

15.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the

results using digital photography. This process is time and labor intensive and may take weeks or longer.

16. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

17. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

18. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

**CONCLUSION**

19. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of JIMENEZ-Chaidez's violations of Title 21, United States Code, Sections 952, 960, and 963.

20. Because the **Target Device** was seized at the time of JIMENEZ-Chaidez's arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Device**.

21. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

1 | I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Steven R. Merklein
Homeland Security Investigations

Subscribed and sworn to before me this 15th day of November, 2019.

Hon. Andrew G. Schopler
United States Magistrate Judge

8

## **ATTACHMENT A**

### PROPERTY TO BE SEARCHED

The following property is to be searched:

    iPhone XS Max, Model: MT652LL/A
    SN: FFWXHU3WKPHC
    IMEI: 357266093945620
    Digital SIM IMEI: 357266094330079
    Seized as FP&F: 2019250500009601
    ("**Target Device**")

The **Target Device** is currently in the possession of Homeland Security Investigations, 2255 Niels Bohr, San Diego, CA 92154.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period from July 10, 2019 through September 11, 2019:

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.